**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**SALVATORE M. BOMBARDIERE, SR.,**

        Plaintiff,

v.                                     **Civil Action No. 1:11-CV-50
(BAILEY)**

**SCHLUMBERGER TECHNOLOGY
CORPORATION, et al.,**

        Defendants.

**MEMORANDUM ORDER DENYING
DEFENDANT'S MOTION TO TRANSFER**

Currently pending before this Court is Defendants Consol Energy, Inc.'s, CNX Gas Company, LLC's, and CNX Gas Corporation's (collectively, "Consol") Motion to Transfer Venue [Doc. 31], filed May 19, 2011. This Court has reviewed the above and is of the opinion that this matter shall more appropriately be adjudicated in the United States District Court for the Northern District of West Virginia. Accordingly, Consol's motion is hereby **DENIED**.

**BACKGROUND**

**I.**     **Factual Allegations**

This action arises from the alleged exposure of the plaintiff, Salvatore M. Bombardiere, Sr., to harmful chemicals while performing hydraulic fracturing ("fracking") for Schlumberger Technology Corporation ("Schlumberger") and Consol at a Marcellus Shale formation near Lightner Run Road in Waynesburg, Pennsylvania [Doc. 3-1].

According to the Complaint [Doc. 3-1], in December 2009, Schlumberger, through

1

its subcontractor, SOS Staffing Services, Inc. ("SOS"), solicited the plaintiff in Lewis County, West Virginia, to perform work involving fracking for Schlumberger and Consol. (Id. at ¶ 29). In February 2010, the plaintiff performed these services at the Lightner Run Road well sites under the direction of Schlumberger and Consol, or one of them. (Id. at ¶ 30). During the course of his employment, the plaintiff was exposed to fracking chemicals without adequate training and protective gear. (Id.). The plaintiff carried these fracking chemicals home on his work clothes and his body resulting in additional exposure in Harrison County, West Virginia. (Id. at ¶ 31).

The chemicals to which the plaintiff was exposed were part of a proprietary mixture of chemicals, which Schlumberger and Consol used with an awareness of the danger posed to human and other life forms to force production of natural gas from the Marcellus Shale formation. (Id. at ¶ 33). These chemicals are caustic, carcinogenic, and otherwise harmful to human beings not adequately trained or equipped. (Id. at ¶ 34).

Specifically, Schlumberger and Consol required the plaintiff to handle open buckets of some or all of these chemicals, including lifting such buckets over his head, and to handle spray hoses for directing fracking chemicals, all without appropriate training or adequate protective gear. (Id. at ¶¶ 35-36). During the plaintiff's employment, Schlumberger and Consol possessed machinery, if functioning and made available, that would have obviated the need for the plaintiff's handling of open buckets of the fracking materials. (Id. at ¶ 37). Similarly, Schlumberger and Consol possessed machinery, if made available, that the plaintiff could have used for cleaning the fracking chemicals from his body at the well sites. (Id. at ¶ 38).

As a consequence of his exposure, the plaintiff developed burns, blood dyscrasias,

testicular deformity, testicular edema, respiratory compromise, increased risk of cancer and other medical disorders, psychological trauma, and post-traumatic stress disorder. (Id. at ¶¶ 88, 98, 108, 118, 125, 132). Moreover, the plaintiff lost income, incurred expenses for medical care and treatment, and is expected to incur future medical expenses, including the costs of medical monitoring. (Id. at ¶¶ 90, 100, 110, 120, 127, 134, 147).

On February 19, 2010, the plaintiff advised his Schlumberger supervisor that he had been injured on the workplace. (Id. at ¶ 136). The plaintiff then advised SOS of the same and indicated his intent to file a worker's compensation claim in West Virginia. (Id. at ¶ 137). After discussing the plaintiff's injury and without offering a job accommodation, SOS terminated the plaintiff's employment on March 11, 2010. (Id. at ¶¶ 138-139).

## II. Procedural History

On February 11, 2011, the plaintiff filed suit in the Circuit Court of Harrison County, West Virginia, against SOS, Schlumberger, and Consol. The Complaint [Doc. 3-1] contains eight counts: (Count I) negligence, (Count II) deliberate intent pursuant to W.Va. Code § 23-4-2(c), (Count III) alter ego, (Count IV) agency, (Count V) strict liability, (Count VI) preparation and use of proprietary chemical fracking fluids, (Count VII) wrongful interference with employment/wrongful interference with protected property interest, and (Count VIII) punitive damages. The defendants were served with the Complaint on March 15, 2011 [Doc. 3-2]. On April 14, 2011, the defendants removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 3].

Upon removal, Consol answered the Complaint and filed crossclaims against SOS and Schlumberger [Doc. 4]. Similarly, Schlumberger filed an Answer [Doc. 5], which

3

included a crossclaim against SOS. A week later, the Honorable Irene M. Keeley transferred the above-styled action to the docket of the undersigned, located in Wheeling, West Virginia [Doc. 7]. This Court ordered that a scheduling conference be held on June 10, 2011 [Doc. 8]. In the meantime, SOS answered the Complaint [Doc. 30], and SOS and Schlumberger answered the crossclaims of Consol [Docs. 28 & 29].

On May 19, 2011, Consol filed the instant Motion to Transfer Venue [Doc. 31], asking this Court to transfer venue to the United States District Court for the Western District of Pennsylvania. In support of its motion, Consol argues that venue is proper in the Western District of Pennsylvania and that the interests of convenience and fairness weigh in favor of transfer. On June 1, 2011, Schlumberger filed a Response [Doc. 32], agreeing with Consol's arguments in support of transfer.

On June 2, 2011, the plaintiff filed a Memorandum in Opposition [Doc. 33] to the requested transfer. First, the plaintiff argues that Consol "has failed to recognize the significant deference that is to be accorded a plaintiff's choice of forum . . .." (Id. at 4). Second, the plaintiff asserts that "the convenience of trying this case in the Western District of Pennsylvania does not outweigh that of allowing the matter to remain in the Northern District of West Virginia." (Id.). Finally, the plaintiff contends that "the interests of justice support keeping this [case] in its present forum . . .." (Id. at 4-5).

On June 9, 2011, this Court entered a Scheduling Order [Doc. 36], selecting a November 13, 2012, date for a trial to be held in Wheeling, West Virginia. The same day, Consol filed a Reply [Doc. 38], reiterating and supplementing its previous arguments in support of transfer.

## DISCUSSION

I.  **Applicable Standard**

When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *See* **Plant Genetic Sys., N.V. v. Ciba Seeds, Mycogen Plant Sci., Inc.**, 933 F.Supp. 519, 526 (M.D. N.C. 1996) (citing **Bartholomew v. Va. Chiropractors Ass'n, Inc.**, 612 F.2d 812, 816 (4th Cir. 1979)). Title 28 U.S.C. 1404(a) permits this Court to transfer a civil action to any other district where such action may have been brought "[f]or the convenience of the parties, in the interest of justice . . .."

Thus, the threshold question of a section 1404(a) analysis is whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action "might have been brought." If the Court answers this initial question in the affirmative, the Court must make an "individualized, case-by-case consideration of convenience and fairness." **Toney v. Family Dollar Store, Inc.**, 273 F.Supp.2d 757, 763 (S.D. W.Va. 2003) (quoting **Stewart Org., Inc. v. Ricoh Corp.**, 487 U.S. 22, 29 (1988)). In so doing, this Court has broad discretion. **Nichols v. G.D. Searle & Co.**, 991 F.2d 1195 (4th Cir. 1993).

It is clear from the pleadings that a substantial portion of the alleged events giving rise to the instant action occurred in Pennsylvania, and the defendants do not contest personal jurisdiction in this case. Accordingly, this Court has answered the initial question, whether both judicial districts are ones in which this civil action might have been brought, in the affirmative.

Having overcome the initial threshold discussed above, in which this Court has determined either of the proposed venues to be proper, this Court must now embark on its

consideration of the following factors, which, in this Court's discretion, will help guide it to the more proper venue. Some of the factors which this Court may consider include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of attendance for witnesses; (4) the availability of compulsory process; (5) the interest in having localized interests decided at home; and (6) the interests of justice. *Toney v. Family Dollar Store*, 273 F.Supp.2d at 763.

Further, this Court must consider the plaintiff's choice of forum. "Unless the balancing of these factors weighs strongly in favor of the defendant, the plaintiff's choice of forum generally should not be disturbed." *Casana Furniture Co., Ltd. v. Coaster Co. of America*, 2009 U.S. Dist. LEXIS 23141, *3, *4 (M.D. N.C. 2009), *Brown v. Flowers,* 297 F.Supp.2d 846, 850 (M.D. N.C. 2003); *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984). Moreover, "[w]hile a district court has discretion to transfer the action to a more appropriate venue, a court should not transfer venue where doing so would only shift the inconvenience to another party." *Casana*, U.S. Dist. LEXIS 23141 at *4-5.

**II.  Analysis**

    **A.  The Ease of Access to Sources of Proof**

In this case, sources of proof for the plaintiff's tort-based claims will potentially consist of witness testimony, documentary evidence, and a view of the well sites. For the reasons that follow, this Court finds that the Western District of Pennsylvania does not provide easier access to any of these three sources of proof.

First, there are likely a number of witnesses located in West Virginia and Pennsylvania who may play a part in discovery and trial. None of those witnesses should have difficulty appearing to testify at trial, which this Court has set in Wheeling, West

Virginia.

Second, "[i]n light of present technology, documentary evidence may be readily produced in this district" or the Western District of Pennsylvania. ***Consolidation Coal Co. v. Marion Docks, Inc.***, 2009 WL 2031774, *9 (W.D. Pa. July 10, 2009). Thus, the documentary evidence in this case, such as the defendants' employee handbook and the plaintiff's medical records, are equally accessible in either district.

Third, the Waynesburg well sites are nearly equal distance from the Wheeling and Pittsburgh courthouses. In fact, the Wheeling courthouse is approximately ten (10) miles closer to the well sites. As such, a jury view of the well sites, if deemed necessary, can be conducted just as easily from either district.

In sum, this Court is of the opinion that the sources of proof in this case are equally accessible in either district. Accordingly, this Court will not give this factor a great deal of weight.

### B. The Cost and Convenience to Parties and Witnesses

Consol argues that the witnesses with knowledge of the well sites, the conditions of the plaintiff's work, the circumstances of the plaintiff's alleged exposure, and the extent of the defendants' knowledge of the exposure reside largely in the Western District of Pennsylvania. In response, the plaintiff argues that a substantial number of the witnesses can be found in West Virginia because many of his coworkers and managers are West Virginia residents.

Upon consideration of the above factor and the arguments in support of the parties' respective positions, this Court finds that the facts of this particular case do not greatly weigh in either party's favor. Accordingly, this Court believes this factor to be of little use

in the instant inquiry.

### C. The Availability of Compulsory Process

Due to the proximity of the two districts at issue, this Court notes that many of the non-party witnesses in this action are within the 100-mile radius of the Northern District of West Virginia's subpoena power under Fed. R. Civ. P. 45(c)(3)(A)(ii). Accordingly, this factor also fails to tip the scales in favor of one party over another.

### D. The Interests of Justice

Finally, in assessing a motion to transfer, this Court must consider the interests of justice, "'an analysis encompassing those factors unrelated to witness and party convenience.'" ***Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.***, 387 F.Supp.2d 564, 571 (E.D. Va. 2005) (quoting ***Acterna, L.L.C. v. Adtech, Inc.***, 129 F.Supp.2d 936, 939-40 (E.D. Va. 2001)). This factor includes such considerations as: (a) a court's familiarity with the applicable law (especially relevant, for example, in cases in which the claims involve interpretation of another state's statutes or another court's jurisprudence); (b) where the claims at issue arose and any consequent local interest in resolving the case locally; and (c) the relative congestion of the courts' dockets. *See **Original Creatine***, 387 F.Supp. at 571 (citing ***Intranexus, Inc. v. Siemens Medical Solutions Health Servs.***, 227 F.Supp.2d 581, 583 (E.D. Va. 2002)).

#### 1. The Court's Familiarity with the Applicable Law.

As an initial matter, this Court must determine which state's substantive law applies – West Virginia or Pennsylvania. When it exercises jurisdiction based on diversity of citizenship, the court must apply the choice-of-law rules of the state in which it sits. ***Klaxon Co. v. Stentor Elec. Mfg. Co.***, 313 U.S. 487, 496 (1941). Accordingly, West Virginia

8

conflicts rules apply.  The first step in any conflicts analysis is to characterize the type of issue involved in order to determine what West Virginia conflict rule to apply.  ***Liberty Mut. Ins. Co. v. Triangle Indus., Inc.***, 182 W.Va. 580, 390 S.E.2d 562, 565 (W.Va. 1990).  It is apparent from the pleadings that the plaintiff's claims are based in tort.

In tort cases, West Virginia generally "adheres to the conflicts of law doctrine of *lex loci delicti*."  ***W.Va. ex rel. Chemtall, Inc. v. Madden***, 216 W.Va. 443, 450-51, 607 S.E.2d 772, 779-80 (2004) (quoting Syllabus Point 1, ***Paul v. National Life***, 177 W.Va. 427, 352 S.E.2d 550 (1986)). "That is, the substantive rights between the parties are determined by the law of the place of injury."  *Id.* at 780 (quoting ***Vest v. St. Albans Psychiatric Hosp.***, 182 W.Va. 228, 229, 387 S.E.2d 282, 283  (1989)).  However, West Virginia will not invoke the doctrine of *lex loci delicti* where "the application of the substantive law of a foreign state . . . contravenes the public policy of this State."  ***Paul***, 352 S.E.2d at 556.  For example, because West Virginia is a comparative negligence jurisdiction, "contributory negligence laws of foreign jurisdictions will not be enforced in the courts of this State."  ***Mills v. Quality Supplier Trucking, Inc.***, 203 W.Va. 621, 624, 510 S.E.2d 280, 283 (1998) (specifically refusing to apply Maryland's contributory negligence doctrine).  Nevertheless, because Pennsylvania is also a comparative negligence jurisdiction, see 42 Pa.C.S. § 7102, this Court will apply Pennsylvania tort law as long as the plaintiff's injury occurred there.

At the heart of the Complaint is the plaintiff's allegation that he was injured as a result of his exposure to caustic chemicals while performing hydraulic fracturing work in Waynesburg, Pennsylvania.  By the plaintiff's own allegations, therefore, the place of his alleged physical injuries is Pennsylvania.  As such, Pennsylvania tort law will apply to the plaintiff's claims which seek redress for those injuries.

On the issue of familiarity, this Court agrees with the opinion of the Honorable Joseph R. Goodwin who recently described being faced with applying a foreign state's medical negligence laws, as follows: "Moreover, the court is hardly troubled by the prospect of having to apply the substantive law of Ohio to this matter. Unlike those cases presenting more intricate state-law issues, the court is confident in its abilities to navigate the contours of Ohio's law of medical negligence." **Harper v. Haupt**, 2011 WL 52240, *5 (S.D. W.Va. Feb. 9, 2011). Like the court in **Harper**, this Court is equally confident in its ability to apply Pennsylvania's laws of negligence and strict liability. Accordingly, this Court's application of Pennsylvania law does not weight in favor of transfer.

### 2. Local Interest.

Consol argues that "the people of the Western District of Pennsylvania . . . have an interest in seeing that this case is resolved in their community [because] Plaintiff was working the in the Western District of Pennsylvania, the well sites were there and the alleged exposure occurred there." ([Doc. 31] at 10).

In response, the plaintiff argues that "[t]he Northern District of West Virginia maintains a significant interest in adjudicating the present matter, as it directly concerns the well being of its citizens." ([Doc. 33] at 12). Specifically, the plaintiff argues that he, a West Virginia resident, was severely injured while performing work for an employee which regularly solicits residents of West Virginia for employment.

Upon consideration of the above factor and the arguments in support of the parties' respective positions, this Court finds that the local interest of the Western District of Pennsylvania does not strongly outweigh this district's interest in the well being of its residents.

### 3. Docket Conditions.

As previously recognized, "[t]his Court does not permit its docket conditions to govern the speed at which its motions are resolved." *Hostetter, Keach & Cassada Construction, LLC v. Miller & Anderson, Inc.*, 2010 U.S. Dist. LEXIS 75570, *16 (N.D. W.Va. July 27, 2010).

In conclusion, this Court finds that the balance of the factors for transfer are strongly in favor of not transferring this action. Accordingly, Consol's motion to transfer should be **DENIED**.

## CONCLUSION

Based upon the foregoing, this Court finds that Consol's Motion to Transfer **[Doc. 31]** should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** June 14, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE